## Baldy's Appeal in McAllister's Estate.

</div>

*Widow's Right to $300 out of her Husband's Estate not affected by the fact that it is claimed against Creditors whose Debt originated prior to July 4th* 1849.—*Postponement of Decree until Settlement of Account not improper.*

1. The widow and administratrix of a decedent claimed her exemption under the Act of 1851, and presented the appraisement to the Orphans' Court for confirmation, but the court declined to adjudicate upon her right to the exemption until the settlement of the administration account: in her account when filed she claimed a credit for the exemption, which was allowed.

*Held,* that such allowance was not error, though the appraisement was not confirmed when made, for it was competent for the court to postpone their decision upon it until the filing of the account, and by their final decree thereon, then to confirm the appraisement.

[Baldy's Appeal in McAllister's Estate.]

2. The Widow's Exemption Act of 1851 is independent of the Debtor's Act of 1849, and is not restricted like that act to debts contracted after any particular period, the only restriction being as to liens for the purchase-money of land: therefore, where the debt against the estate of the decedent existed prior to the 4th of July 1849. the time to which the operation of the Debtor's Act was restricted, it would have no effect to prevent the allowance of the $300 exemption claimed by the widow under the Act of 1851.

APPEAL from the Orphans' Court of *Montour county*.

This was an appeal by Peter Baldy and B. K. Rhodes, administrators of Archibald McAllister, from the decree of the Orphans' Court confirming the auditor's report on the account of Elizabeth McAllister, administratrix, &c., of Martin McAllister, deceased. The material facts of the case are as follows:—

Martin McAllister died in the year 1859. Elizabeth McAllister, his widow, administered on his estate. Shortly after receiving letters of administration, she filed, in the Orphans' Court of Montour county, an inventory and appraisement of $300 worth of property, which she claimed to retain as widow under the exemption laws: $274 of this amount was in money; the balance in articles of personal property. Peter Baldy, a creditor of the decedent, whose debt originated prior to the year 1849, filed exceptions to this inventory and appraisement, on the ground that the widow was not entitled to retain the property as against his debt. The court refused to approve of the appraisement at the time, leaving the widow at liberty to renew her claim when she should settle her account, at which time the question might be more directly raised. November 16th 1860, the administratrix filed her account. In this she charged herself with the whole personal estate, and took credit for $300, which she claimed to retain as widow under the Act of 14th April 1851, and the Act of 8th April 1859. December 22d 1860, Peter Baldy filed exceptions to the account, one of which was that the administratrix was. not entitled, as against his claim, to this credit of $300. Baldy's debt largely exceeded the amount of the whole estate of decedent. An auditor was appointed to report on the exceptions, and also a distribution of the fund, whose report, filed 18th February 1861, allowed the administratrix the credit for $300, and reported a distribution among creditors. Peter Baldy and B. K. Rhodes, administrators of Archibald McAllister, another creditor of the estate whose debt originated prior to the 4th of July 1849, thereupon excepted to auditor's report on the ground that the credit for $300 was improperly allowed. The report was then recommitted, to allow a creditor to make proof of his debt. May 22d 1860, the second report of the auditor was made and confirmed *nisi*, and same day, "report of the auditor was confirmed by the court, and distribution decreed accordingly."

The case was thereupon removed into this court, as above stated, where the decree of the court confirming the report of

.the auditor, which gave to the widow of deceased $300, as against creditors whose claims originated prior to July 4th 1849, was assigned for error.

*E. H. Baldy* and *B. K. Rhodes*, for appellants.—The Act of April 9th 1849, exempting the property of debtors from levy and sale, and the Act of April 14th 1851, allowing the widow and children of a decedent to retain this amount, are in *pari materia*, and must be construed with reference to each other. The former did not extend to debts before the 4th of July 1849, while the latter only gave to the widow and children the right which the husband had possessed in his lifetime: Neff's Appeal, 9 Harris 247; Davis's Estate, 9 Leg. Int. 82; Young's Estate, Id. 140; Runyan's Appeal, 3 Casey 121. The policy of the legislature has been to confine the Exemption Law to debts contracted after the passage of the act. See the Act of April 10th 1828 and Act of 1836. Beside this, the widow is concluded by the refusal of the Orphans' Court to approve her inventory and appraisement of $300 worth of property: Runyan's Appeal, 3 Casey 121. Her right to retain it as against creditors was excepted to, and the court, in withholding their confirmation, adjudicated the question, from which there was no appeal.

*Comly & Leidy*, for appellees.—The refusal of the Orphans' Court to approve of the appraisement, was put on the ground that it was "better to withhold it, and allow the widow, if she thought proper, to renew her claim in her administration account, when she might raise the question more directly." This left her as if no appraisement had been made, or at most, decided that she could not retain the specific articles amounting to $26. The money required no appraisement: Larrison's Appeal, 12 Casey 130. In the case last cited, and in Spencer's Appeal, 3 Casey 218, there appears to have been no appraisement, and yet the widow was allowed $300 under the Act of Assembly. An approval may conclude the parties, because it is an adjudication; but a postponement or refusal may be for various collateral reasons. As to the other point. The decedent died insolvent, and his estate was all personal. The exception as to debts contracted before July 4th 1849, which is in the Act of 1849, is not to be found in the Act of 1850 or 1851, relative to widows. Neff's Appeal was a case of *liens* acquired against the deceased in his lifetime. In Runyan's Case, 3 Casey 121, this point was not raised. In Hildebrand's Appeal, 3 Wright 133, the widow's claim was sustained against a mechanic's lien-creditor. Some of the exceptions in the Act of 1849 are inserted in the Acts of 1850 and 1851, while this one is excluded. This must have been intentional.

The opinion of the court was delivered, November 29th 1861, by

THOMPSON, J.—The Orphans' Court declared expressly in this case, on the presentation of the appraisement of the widow's claim under the Exemption Act of the 14th April 1851, that they would not adjudicate in regard to it at that time, but defer their determination until the settlement of her account as administratrix, when the question of her right would be more directly raised.   Accordingly exception was taken to the credit claimed by her for the $300, as also to other matters in her administration account, and on reference of the exceptions to the account to an auditor, he reported in favour of her claim to the exemption, and the court confirmed that report.   The failure to confirm the appraisement when presented was no adjudication against it, for the court expressly say so.   We cannot make out a decree against her when the record does not say that any exists, and when the court say that none was to be intended— she is not estopped by that.   Indeed, we will treat the decision on the appraisement as being postponed and consummated at the final decree on the exception to the administration account.   That judgment under the circumstances includes a confirmation of the appraisement, so far as the $26 worth of personal property was concerned, for it was deferred to that very point of time. As to the money no appraisement was necessary, and it could be claimed in the administration account without any appraisement. But if not, an appraisement was made as to it, and confirmed in the final decree, as was that of the property.   This exception is not sustained.

As to the other and main point in the case, we feel no perplexity.   The Act of 1851, under which this exemption was claimed, is not restricted, like the Debtor's Act of 1849, to debts contracted after any particular period.   Those terms are, "hereafter" the widow or children of a decedent might retain $300 for the use of the family of such decedent.   The only express restriction or saving is of liens for the purchase-money of land. It has no reference to debts contracted prior to the 4th of July 1849.   That belongs to another act in favour of a different class of beneficiaries.

We have no warrant for importing that provision into this act. It is not a supplement to that act, but is an independent enactment, resembling it in character, but not dependent upon, or to be governed by it.   It was within the power of the legislator to restrict the extent of the creditor's recourse against the debtor's property for the purpose of exemption, certainly where no specific lien existed on the property at the passage of the act.   This power was expressly asserted in Spencer's Appeal, 3 Casey 208, and we might leave the case here, for this disposes of any supposed constitutional difficulty about vested rights.   But a general

[Baldy's Appeal in McAllister's Estate.]

creditor has no vested right in the property of his debtor. This is distinctly asserted by Tilghman, C. J., in The Commonwealth *v.* Lewis, 6 Binn. 266. He has *such* a right to process to enable him to have recourse to his debtor's property, and his right in the property exists to have his money made out of it after seizure. But between the creation of the debt and the seizure it is not specifically pledged to a general creditor. The debtor may sell it, or the law may seize it upon demands subsequently arising without regard to the precedent general creditor, and this without any infringement of the rights of such creditor, for, as already said, he has no right to the property until he fixes upon it a specific lien. But we need not elaborate this point. We are all of opinion that the debt of the appellant, existing prior to the 4th of July 1849, had no effect to prevent the allowance of the claimed exemption, and we must affirm the decree of the Orphans' Court.

　　　　　Decree affirmed at the costs of the appellant.