# Sellers's Estate. Soult's Appeal.

1. An appraisement confirmed by the court, is a matter of record possessing the effect of a judgment and open to no collateral review, but such a record is conclusive of the subject to which it relates, and of nothing else, and where, after an appraisement, the value of the goods was ascertained to be $48, and it was in evidence that a widow claimed $252, the residue of her $300, under the exemption law, out of a security belonging to her husband, but no note of her claim was made in the appraisement, the confirmation of the appraisement, while conclusive as to the goods, did not affect that residue.

2. It is the valuation of chattels which cannot be calculated or counted, but which must be estimated by appraisers, the law requires the court to approve or set aside, but where the widow elects to take money or the proceeds of securities or stocks, and her demand is made in proper time, they may be claimed in the administrator's account without appraisement.

May 22d 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD JJ. WILLIAMS, J., absent.

[Sellers's Estate.]

Appeal from the Orphans' Court of *Mifflin county :* Of May Term 1876, No. 87.

This was the appeal of George W. Soult, administrator *cum testamento annexo* of George Sellers, deceased, from the decree of the Orphans' Court confirming the report of the auditor on exceptions filed to the account of said administrator.

George Sellers made his will on the 5th of April 1873, wherein were certain bequests to Elizabeth Gibboney, whom he afterwards married and thus revoked the will as to her. The residue of his estate, according to the provisions of the will, was to go to his grandchildren, the children of his son Edmund Patterson Sellers.

The testator died on the 20th of January 1874, and George W. Soult was appointed administrator with the will annexed.

On the 10th of November 1874 appraisers were appointed, who made an inventory and appraisement of the goods and chattels of the deceased.

The widow claimed under the $300 exemption law the specific articles bequeathed to her in the will, amounting in value to about $15, and the rest of the goods found on the premises, all of which were accordingly valued and appraised to her, amounting in the aggregate to $48, which appraisement was filed of record in the Orphans' Court, and presented to said court and confirmed in January 1875.

At the August Term following the administrator settled his account in which was a credit of $252, paid the widow out of the proceeds of the note of William Johnson, to make up, as she claimed, the balance of the $300 due her under the exemption law.

The guardian of the minor grandchildren of George Sellers excepted to this payment of $252 to the widow, on the ground that she was concluded by the appraisement and confirmation thereof by the court, and the court appointed an auditor to report on the exceptions.

It appeared before the auditor that there was no note of the widow's claim in the appraisement, but there was the following evidence that she made the claim at the time the appraisement was made.

George W. Soult: The widow claimed her $300, and the balance over and above the appraisement out of the note of William Johnson. She claimed the $300 and we saw at once that the goods would not reach. She agreed to take them as far as they went at the appraisement, to save the expense of a sale, and the balance she claimed in money out of the William Johnson note.

Cross-examined : I had not collected the money on the Johnson note at the time. No entry made in the appraisement as to the $252 because I did not think it was necessary.

Amos Hoot, one of the appraisers, testified : On the day of the appraisement Mrs. Sellers, after the appraisement of the personal property, claimed the balance out of the Johnson note. I think, but

[Sellers's Estate.]

I am not certain about it, that there was a Johnson note and a Brought note; and I think she said Soult might collect the Brought note, and she would take her balance out of the Johnson note.

On cross-examination: I don't know whether her claim for the Johnson note is entered on the appraisement or not; I can't say positively whether Mrs. Sellers made a claim on the Johnson note or not, but I believe she did.

The auditor in his report said: " The widow can only have what the court awards, and having in this case awarded but $48, she can claim no more. Whether an appraisement of money or notes as good as money, may be dispensed with in certain cases or not, is not material; but appraised or not appraised, the widow's claim must be set out, reported to the court and if approved, must be confirmed."

The auditor found that the payment of the administrator to the widow of the $252, was a mispayment and surcharged him with that sum.

To this finding the administrator excepted.

The court below (Bucher, P. J.) dismissed the exception and confirmed the report of the auditor, in their opinion saying, " The decree of the court confirming the appraisement is final and conclusive. The widow could not get behind it. If she made the claim and the administrator neglected to note it in the appraisement, her remedy would be against him personally: Compher v. Compher et al., 1 Casey 31. The administrator now seeks to avoid the decree and adjudication of the court, and thus allow the widow more than was adjudicated to her, and more than the record shows she demanded.

" But it is urged that here the widow did demand more than the appraisers set out to her, and that the administrator having paid her the demand injustice will be done him unless the credit is allowed. The only proof we have of this claim is in the evidence of the accountant, and it is in the teeth of the record; and whilst we do not say that he is unreliable as a witness, yet his mistakes or disregard of his duty is no reason why the rules of law should be set aside for his benefit. The vice in the whole matter is that this claim should have been included in the appraisement or reported to the court. It was not so done, and if a loss ensues thereby, it must be laid to the door of him who failed in the discharge of his duty."

The administrator appealed and assigned for error the decree of the court.

*D. W. Woods*, for appellant.—When the widow claims her $300 either in money or evidences of debt, there is no necessity of appraisement. To appraise money is only to count it: Larrison's Appeal, 12 Casey 130; Baldy's Appeal, 4 Wright 328; Peterman's Appeal, 26 P. F. Smith 116.

*Horace J. Culbertson*, for appellees.—The confirmation of the appraisement is a judgment *in rem* of the Orphans' Court: Runyan's Appeal, 3 Casey 122. Its judgments are final and conclusive and cannot be assailed collaterally by parol: Gilmore *v.* Rodgers *et al.*, 5 Wright 120; Merklein *v.* Trapnell *et al.*, 10 Casey 46; Keech *v.* Rinehart, 10 Barr 242; Lockhart *v.* John, 7 Id. 137; Welty *v.* Ruffner, 9 Id. 225; Torrance *v.* Torrance, 3 P. F. Smith 510; Baskin's Appeal, 2 Wright 68; Vandevort's Appeal, 7 Id. 462.

Mr. Justice WOODWARD delivered the opinion of the court, October 9th 1876.

Under the statutes passed to regulate the exemption rights of widows and children in the estates of decedents, some rules have been firmly settled. The demand for the exemption must be made, or the privilege will be held to be waived: Davis's Appeal, 10 Casey 256. It must be made within a reasonable time: Burk *v.* Gleason, 10 Wright 297; before a sale of property: Neff's Appeal, 9 Harris 243; before the executor has incurred expenses in proceedings to effect a sale: Davis's Appeal, *supra*; before the estate has been administered: Baskin's Appeal, 2 Wright 65; and before the interests of other parties shall have been affected by delay: Kirkpatrick's Estate, 5 Phila. 98. There can be but one appraisement, and if property of less value than $300 be elected to be retained, the right to the residue is waived: Davis's Appeal and Baskin's Appeal, *supra*. If the claim be duly made, and be disregarded or refused, the remedy is by a personal action against the personal representative of the decedent: Compher *v.* Compher, 1 Casey 31. But the demand may be for property to the value of $300 out of the decedent's real or personal estate, or for the sum of $300 out of banknotes, money, stocks, judgments or other indebtedness: Acts of 14th April 1851, and 8th April 1859. If money, as such, or money out of any security is retained, appraisement is not necessary: Larrison's Appeal, 12° Casey 130; Baldy's Appeal, 4 Wright 328; Peterman's Appeal, 26 P. F. Smith 116.

There is no doubt of the accuracy of the principle asserted on behalf of the appellees, that an appraisement confirmed by the court is a matter of record, possessing the effect of a judgment, and open to no collateral review. It is the foundation of the widow's right —it forms her very title to the property. But such a record is conclusive of the subject to which it relates, and of nothing else. In this case the widow desired to retain certain personal property, and the administrator procured to be made what is recited to be, "a true and perfect inventory and just appraisement of all and singular the goods and chattels, rights and credits which were appraised to Elizabeth Sellers, widow." The ascertained value was $48. It is alleged on behalf of the appellant that this sum formed part only

of her demand, and that her claim to $252, the residue of $300, was out of a security belonging to her husband. If the fact were so, the appraisement could in no way affect that residue. Conclusive as to the chattels, the record had no connection with the Johnson note. The widow's right to that rested on her election to retain the balance of her claim out of it, and not on any action of the appraisers, the administrator or the court. The whole question becomes one of evidence alone. Did Mrs. Sellers elect to retain $252 out of this particular security? If so, the appellant performed a simple duty when he paid her.

Read in the light of Larrison's Appeal and Baldy's Appeal, the language of the Act of the 8th of April 1859 proves the propriety and accuracy of the construction that has been given to this claimant's rights. "The widow or children of any decedent, entitled to retain $300 out of such decedent's estate, by the laws of this Commonwealth, and every person entitled to the exemption provided for by the act entitled 'An Act to exempt property to the value of $300 from levy and sale on execution or distress for rent, approved the 9th day of April A. D. 1849, may elect to retain the same, or any part thereof, out of any bank-notes, money, stocks, judgments or other indebtedness to such person. And in all cases hereafter, where property shall be set apart for the widow and children of any decedent, the same shall be appraised and set apart to said widow and children by the appraisers of the other personal estate of the decedent." The word "property" in the concluding clause of the section was manifestly used in the relation in which the same word was used in the Act of 1851, and in contradistinction to the provision for the exemption that should consist of bank-notes or money left by the husband or realized from evidences of debt. The Act of 1851 had directed the appraisement of property elected to be retained by a widow or children, "in the same manner as provided in the Act passed the 9th day of April 1849." The change made by the Act of 1859 consisted in directing an appraisement "by the appraisers of the other personal estate of the decedent." Baldy's Appeal was decided in 1861, and Peterman's Appeal in 1874. In both cases, obviously, the provision for appraisement in the Act of 1859 was treated as applicable to property in the sense of land or chattels, and not to property in the sense of money, or of the proceeds of securities or stock.

As already stated, the question here is one of fact. Did the widow claim in addition to the chattels appraised at $48, $252 out of the note of William Johnson? The auditor appears to have regarded the point as unimportant, and no distinct finding in regard to it was reported. His decision was based on the ground that "the widow can only have what the court awards, and having in this case awarded but $48, she can claim no more. Whether," the report added, "an appraisement of money, or notes as good as

[Sellers's Estate.]

money, may be dispensed with in certain cases or not, is not material; but appraised or not appraised, the widow's claim must be set out, reported to the court, and if approved, must be confirmed." The rule thus stated is supported by no recognised authority. So far from that, it is believed to be in conflict as well with the current practice throughout the state as with the spirit of the decisions of this court. The true rule is, that where a demand has been made in proper time, the money, in the language of Judge THOMPSON, in Baldy's Appeal, may "be claimed in the administration account without any appraisement." It is not the widow's claim, but the appraisement of chattels elected to be retained, on which it is made the duty of the court to pass. The right to elect rests in the statutes, and is a question between the widow and the administrator. It is the valuation of chattels, that cannot be calculated or counted, but must be estimated by appraisers, which the law requires the court to approve or set aside. Turning to the evidence referred to in the opinion of the court below, and contained in the paper-book, the question of fact becomes free from difficulty. George W. Soult, the appellant, testified that "the widow claimed her $300, and the balance over and above the appraisement out of the note of William Johnson. * * * We saw at once that the goods would not reach. She agreed to take them as far as they went, without appraisement, to save the expense of a sale, and the balance she claimed in money out of the William Johnson note. * * * No entry was made in the appraisement as to the $252, because I did not think it was necessary." Amos Hoot was one of the appraisers. He testified: "Mrs. Sellers, after the appraisement of the personal property, claimed the balance of the $300 out of the Johnson note. I think, but am not certain about it, that there was a Johnson note and a Brought note; and I think she said Soult might collect the Brought note, and she would take her balance out of the Johnson note." On cross-examination he said: "I cannot say positively whether Mrs. Sellers made a claim on the Johnson note or not, but I believe she did." This was the only proof on the subject. It was uncontradicted, and for all that appears in the record was credible and trustworthy. It was ample to sustain the appellant's claim to be allowed for the $252, which it was admitted he had paid to the widow before the administration account was filed.

> Decree reversed at the costs of the appellees, and auditor's report set aside; and thereupon it is decreed that the exceptions to the administration account be dismissed, and the account be confirmed.