## Sharp *v.* Woolslare.

*Bankruptcy—Federal act—Exemption—Jurisdiction—Attachment execution.*

A federal trustee in bankruptcy is not entitled to the bankrupt's exemption of $300, against a creditor who has attached the same by an attachment execution issued and served within four months prior to the bankruptcy, on a judgment waiving exemption.

Argued April 15, 1904. Appeal, No. 75, April T., 1904, by Justus Mulert, trustee in bankruptcy of A. H. Woolslare, from order of C. P. No. 2, Allegheny Co., July T., 1901, No. 696, distributing fund in court in case of J. P. Sharp, executor of George Sharp, deceased, v. A. H. Woolslare. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was the order of the court.

*Albert York Smith*, with him *Hudson & Howley*, for appellant.—The assignee in bankruptcy, though representing only creditors at large, can maintain an action to set aside as fraudulent and void a sale upon execution issued upon a judgment on a cognovit note of the bankrupt, given with the intent to secure a preference : Balfour v. Wheeler, 15 Fed. Repr. 229 ; Norcross v. Nathan, 99 Fed. Repr. 414 ; Adams v. Merchant's Nat. Bank, 2 Fed. Repr. 174 ; Crooks v. Stuart, 7 Fed. Repr. 800.

The trustee in bankruptcy, like a sheriff in levying an execution, is entitled to at least temporary control of the exempted property until it can be set apart from the rest: Sheldon v. Rounds, 40 Mich. 425, quoted in Black on Bankruptcy, page 49.

The trustee is required to set apart the exemptions in the first instance and report the items and estimated value: White's Case, 103 Fed. Repr. 774; Friedrich's Case, 100 Fed. Repr. 284.

Attachments in said courts of the property of the bankrupt brought within four months of the commencement of proceedings in bankruptcy under act of 1867 are dissolved by the decree in bankruptcy as from the date of the petition: Chapman v. Brewer, 114 U. S. 158 (5 Sup. Ct. Rep. 799); Bear v. Chase, 99 Fed. Repr. 920; Miller v. Shriver, 197 Pa. 191; Mencke v. Rosenberg, 202 Pa. 131.

*T. S. Parker*, for appellee.—That the trustee is not so entitled to the exemption or administration thereof is clearly shown by the provision of the act itself, approved July 1, 1898, and as set forth in sec. 70 (*a*) of said act, viz: Woodruff v. Cheeves, 105 Fed. Repr. 601; Bass's Case, 3 Woods, 382; Chattanooga Nat. Bank v. Rome Iron Co., 102 Fed. Repr. 755.

OPINION BY MORRISON J., May 19, 1904:

On June 13, 1901, J. P. Sharp, executor of George Sharp, deceased, issued an execution attachment against A. H. Woolslare on a judgment at No. 134, July term, 1901, in Allegheny county, and summoned James Lyons as garnishee.

On June 19, 1901, after this attachment execution was issued and served Woolslare filed a voluntary petition in bankruptcy, on which he was adjudged a bankrupt the same day. Subsequently at a meeting of the creditors of said bankrupt, Justus Mulert was appointed trustee of the bankrupt's estate.

On July 2, 1901, interrogatories were served on James Lyons, garnishee, and he subsequently filed answers in which he admitted that there were in his hands moneys belonging to said Woolslare to the amount of $493.98. On October 31, 1901, Mulert, trustee, applied to the referee in bankruptcy for an order on the attaching creditors to have the attachment declared null and void and the money turned over to the referee. This matter was heard by the referee and the petition dismissed on the ground that the common pleas court of Allegheny county had already taken jurisdiction of the case, and under the act that court was competent to dispose of the

matter without the interference of the United States district court.

On December 21, 1901, Mulert, trustee, brought suit in the court of common pleas of Allegheny county against James Lyons for the amount admitted to be in Lyons's hands belonging to Woolslare. On argument, his honor, Judge STOWE, filed an opinion indicating that this money should be turned over to the trustee as the attachment was null and void, having been issued within four months prior to the petition in bankruptcy, but his honor held that as the common pleas court No. 2 had taken jurisdiction, No. 1 could not interfere in the matter.

On May 24, 1902, Mulert, trustee, petitioned the court and obtained a rule to show cause why the attachment execution should not be dismissed on the ground of its having been filed within four months prior to the bankruptcy petition, and an order made on James Lyons, garnishee, to pay over to the petitioner the sum of $493.98 in his hands. This rule was answered, and on argument it was discharged on June 21, 1902, by his honor, Judge SHAFER.

Subsequently on May 6, 1903, a jury was sworn, and they returned a verdict that there was $493.98 in the hands of James Lyons, garnishee. Subsequently Lyons presented his petition to court and this money was paid into the registry of the court, where it is now held.

On May 14, 1903, Mulert, trustee, presented another petition and obtained a rule on plaintiff to show cause why the attachment in this case should not be declared null and void and the court direct the payment of the money, now in court, to the petitioner, Mulert.

On July 18, 1903, this rule was discharged by Judge SHAFER without any opinion filed, and on the same day judgment was taken on the verdict against the garnishee.

On July 22, 1903, another petition was presented by Mulert, trustee, and a rule granted on the plaintiff to show cause why the money in court should not be turned over to said trustee. This rule was returnable July 29, 1903, and on September 19, 1903, the court, SHAFER, Judge, made a distribution of the money in court as follows : " Justus Mulert, trustee in bankruptcy, $193.98 ; James Lyons, garnishee, for counsel fees, $25.00 ; J. P. Sharp, executor, plaintiff in attachment, $275."

To this decree of distribution an appeal and certiorari was taken by Mulert, trustee.

The learned counsel for the appellee states the question involved thus: "Is the trustee in bankruptcy entitled to the bankrupt's exemption, against a creditor who has attached the same on a judgment waiving exemption, issued and served prior to bankruptcy, and in which other creditors of the bankrupt have no interest?"

It is strongly contended by the appellee and not seriously questioned by the appellant that the bankrupt was entitled to $300 exemption out of the money in the hands of James Lyons, garnishee.

The law is well settled that where a defendant claims his $300 exemption, under our statute, out of money, no appraisement is necessary. We, therefore, conclude that beyond question the defendant, Woolslare, was entitled to $300 of the money in question as exempt, and that the title to it did not pass to the trustee in bankruptcy: Larrison's Appeal, 36 Pa. 130.

" The trustee of the estate of a bankrupt . . . . and his successor or successors . . . . shall in their turn be vested by operation of law with the title of the bankrupt as of the date he was adjudged bankrupt, except so far as it is to property exempt: " Bankruptcy act approved July 1, 1898, sec. 70 (a).

In Woodruff v. Cheeves et al., 105 Fed. Repr. 601, it was held that the court as a court of bankruptcy had no power under the bankrupt act of 1898, to take possession of and administer the exempt property, which under section 6 and 70 (a) constituted no part of the estate in bankruptcy. In Lookwood v. Exchange Bank, 190 U. S. page 294, this question is considered by the United States Supreme Court. In delivering the opinion of the court, Mr. Justice WHITE, June 1, 1903, page 299, said: "Under the bankruptcy act of 1867, it was held that property generally exempted by the state law from the claims of creditors was not part of the assets of the bankrupt. and did not pass to the assignee, but that such property must be pursued by those having special claims against it, in the proper state tribunals. Thus, speaking of the act of 1867, Mr. Justice BRADLEY (Re Bass, 3 Woods, 382, 384, Fed. Cas. No. 1,091) said: Not only is all property exempted by state laws as those laws stood in 1871, expressly excepted from the

operation of the conveyance to the assignee, but is added in the section referred to, as if ex industria, that these exceptions shall operate as a limitation upon the conveyance of the property of the bankrupt to his assignee, and in no case shall the property thereby excepted, pass to the assignee, or the title of the bankrupt hereto be impaired or affected by any of the provisions of this title.'

" In other words, it is made as clear as anything can be that such exempted property constitutes no part of the assets in bankruptcy. The agreement of the bankrupt in any particular case to waive the right to the exemption makes no difference. He may owe other debts in regard to which no such agreement has been made. But whether so or not, it is not for the bankrupt court to inquire. The exemption is created by the state law, and the assignee acquires no title to the exempt property. If the creditor has a claim against it, he must prosecute that claim in a court which has jurisdiction over the property, which the bankrupt court has not."

Mr. Justice WHITE continues : " We think that the terms of the bankruptcy act of 1898, above set out, as clearly evidence the intention of congress that the title to the property of a bankrupt, generally exempted by state laws, should remain in the bankrupt, and not pass to his representative in bankruptcy, as did the provisions of the act of 1867, considered in Re Bass. The fact that the act of 1898 confers upon the court of bankruptcy authority to control exempt property in order to set it aside, and thus exclude it from the assets of the bankrupt estate to be administered, affords no just ground for holding that the court of bankruptcy must administer and distribute, as included in the assets of the estate, the very property which the act, in unambiguous language, declares shall not pass from the bankrupt, or become part of the bankruptcy assets. The two provisions of the statute must be construed together, and both be given effect. Moreover, the want of power in the court of bankruptcy to administer exempt property is, besides, shown by the context of the act; since, throughout its text, exempt property is contrasted with property not exempt, the latter alone constituting assets of the bankrupt estate subject to administration. The act of 1898, instead of manifesting the purpose of congress to adopt a different rule from that which was

applied, as we have seen, with reference to the act of 1867, on the contrary, exhibits the intention to perpetuate the rule, since the provision of the statute to which we have referred in reason is consonant only with that hypothesis."

In our opinion the above authority conclusively disposes of the question raised in this appeal as to the $300 exemption in favor of the bankrupt. In our opinion it would have been error for the court of common pleas of Allegheny county to have surrendered jurisdiction of this money and to have directed it to be paid to the trustee in bankruptcy. As to the surplus of the fund it is equally clear it should be paid to the trustee in bankruptcy. The record, however, shows that the learned court took this view of the matter and in the decree directed that all of the money in excess of $300 should be paid to Mulert, trustee. This substantially complies with the requirements of the law, and the trustee had no just ground of complaint and no reason for taking this appeal. Whether or not in strictness the court had jurisdiction of the money in excess of the $300 exempted is not very material for the reason the money was in court, and the learned judge decreed that it should be paid to the trustee, and no question is or can be raised about the power of the court to cause the $193.98 to be paid over to him.

In our opinion this appeal and the assignments of error are without merit, and the appeal is therefore dismissed at the cost of the appellant, and the order of the court distributing the said sum of $493.98 is affirmed.