# Adair v. Decker, Appellant.

*Promissory notes—Renewal notes—Payment—Agreement—Judgment note—Opening judgment—Collateral.*

Renewal notes do not constitute.legal payments of the debts represented by original notes, unless there is an express agreement of the parties to that effect.

Where a judgment has been entered upon a judgment note, and subsequently a part of the judgment has been paid, and a renewal note given for the unpaid balance, the renewal note is entitled to the protection of the lien of the judgment until such note has been paid.

Where a judgment· note is given to a partnership, and judgment entered thereon, and subsequently the partnership is dissolved, and its successor takes over its assets and agrees to pay its debts, and thereafter a part of the original note is paid, and a renewal note for the balance given, the successor to the partnership is entitled to the protection of the lien of the judgment until the renewal note is paid.

*Bankruptcy—Federal act—Debtor's exemption—Pennsylvania insolvent act—Act of June 4, 1901, P. L. 404—Waiver of exemption.*

The provision in the 31st section of the Act of June 4, 1901, P. L. 404, relieving a debtor from the consequences of a waiver of exemption in any contract or judgment, does not apply to insolvents or the estates of insolvents in general, but only applies to insolvents who have taken advantage of the act.

Property generally exempted by state laws from the claims of creditors, is not part of the assets of the bankrupt, and does not pass to the assignee, but such property must be pursued by those having special claims against it in the proper state tribunals.   If it appears that the bankrupt has waived the exemption in favor of a particular creditor, and has not taken the benefit of the Pennsylvania insolvency act of 1901, the creditor may take in execution the exempted property set apart by the federal court.

Argued March 13, 1907.   Appeal, No. 12, March T., 1907, by defendant, from order of C. P. York Co., Jan. T., 1906,

**154**          ADAIR v. DECKER, Appellant.

No. 105, discharging rule to open judgment in case of Adair & Reiff v. Thomas R. Decker.    Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Rule to open judgment.

WANNER, J., filed the following opinion:

The defendant asks the court to set aside the fi. fa. in this case and to open the judgment and let the defendant into a defense, on the ground of payment of the several debts secured by this collateral judgment.

His petition contains a general allegation of the payment of a certain note of $1,000 indorsed by Adair & Reiff for defendant's accommodation, and of other notes amounting to $500 given by him for tobacco purchased from them.    But no details of the payment are given in the petition to open this judgment, and though the execution plaintiff denied said above payments in the answer filed, the defendant has offered no further evidence to the court to sustain his allegation of payment.

It clearly appears, however, from the testimony of the execution plaintiff and others, that $750 is still due and owing on a renewal note given by defendant for the unpaid portion of the original $1,000 note covered by this collateral judgment.

Renewal notes were given from time to time by the defendant, but they were only acknowledgments of the original debt.    It is well settled that they do not constitute legal payments of the debt unless there was an express agreement of the parties to that effect: McCartney v. Kipp, 171 Pa. 644; Shrewsbury Savings Institution's Appeal, 94 Pa. 309.

There is no evidence in this case of such an understanding between the parties.    " It follows, therefore," as was said in the last cited case, " that the indebtedness for which the judgment was given as collateral, being still unpaid, the debtor has no standing to allege that the note is not protected by the lien of said judgment."    This was said of a similar renewal note in that case and is precisely applicable to the facts of this case.

Defendant's counsel contended that this collateral judgment was only given to secure payment of the several notes named in the petition, but the evidence submitted by the execution plaintiff, fully establishes the fact that it was a general col-

lateral, and was intended to cover not only the defendant's then existing indebtedness to the firm of Adair & Reiff, but also such as might afterwards accrue.   As there is still $750 due on a renewal of one of the notes admitted by defendant to have been covered by this collateral judgment, the extent of the collateral is scarcely a material question in this case.   The firm would, under the above-recited decisions, clearly be entitled to enforce its collateral judgment against the defendant for this unpaid balance of the debt due it on the original note, although evidenced now only by a renewal thereof.   It is claimed by the defendant that the dissolution of the partnership relieves him from payment of this collateral obligation because it was given to the firm only.   But by the terms of dissolution all the firm property, assets and claims were assigned to James Adair, the present execution plaintiff, who, in consideration thereof, assumed payment of the debts of the firm. He therefore has the same right to enforce this collateral as the firm itself had, before its dissolution.   No authority has been cited to the contrary by counsel and any other conclusion would be manifestly unjust to the creditor and unmerited by the debtor, who is under the fullest legal obligation to pay this debt to the assignee of his former creditor.

There is no merit in the objection made to the sale of the debtor's exempt property because it was set aside to him in bankruptcy proceedings.   That such property may be seized and sold by a judgment creditor (whose judgment waived the exemption) before the final discharge of the bankrupt, has been repeatedly decided by the courts : Wagenseller v. Gemberling, 13 Pa. Dist. Rep. 716 ; Lockwood v. Exchange Bank, 190 U. S. 294; Sharp v. Woolslare, 25 Pa. Superior Ct. 251 ; Gilmore & Co. v. Smith, 15 Pa. Dist. Rep. 347.

We find no sufficient warrant either in the law or in the facts of this case to justify the court in staying this execution or opening this judgment.   There is clearly now due and owing to the execution plaintiff a portion of the original debt due the firm of Adair & Reiff, greater in amount than the whole of the property seized under fi. fa., and the defendant will suffer no injustice if the law is permitted to take its course in the sale of the same : Parrish v. Felts, 12 Luz. Leg. Reg. Rep. 457.

The rule to show cause why this fi. fa. should not be set aside, and the judgment note opened, is therefore discharged at the cost of the defendant.

On reargument WANNER, J., filed the following opinion:

In a former opinion, the court refused to open this collateral judgment, or to set aside the fi. fa. under which the bankrupt defendant's exempt property was seized, because there remained unpaid a portion of the original indebtedness secured by this collateral, greater in amount than the value of the goods levied upon; and because the exempt property of a bankrupt may legally be sold by a creditor whose judgment contains a waiver of the benefit of the exemption laws.

Upon a reargument of the case, defendant's counsel contended that section 31 of the Act of June 4, 1901, P. L. 404, secures to an insolvent his exemption in all cases, notwithstanding a waiver thereof in his judgment note, and notwithstanding the fact that he may not have made an assignment under the provisions of that act.

It was urged that the national bankrupt act of 1898 only suspended such parts of the act of 1901, as conflict with said act of congress, which expressly reserves to bankrupts the exemption allowed them by the state laws in force at the time of the filing of the petition in bankruptcy, and, therefore, that section 31 of the act of 1901, protecting the insolvent against any waiver of the exemption by him, is still effective, notwithstanding the proceedings in bankruptcy in the defendant's case.

But we do not so understand the act of 1901, and the decisions of the Superior Court of Pennsylvania, on this subject.

It was held in Potts v. Smith Manufacturing Co., 25 Pa. Superior Ct. 206, after a careful review of the decisions of the courts of this and other states, that the national bankruptcy act was intended to supersede, and does supersede and suspend, all state laws relating to insolvency or bankruptcy; that the act of 1901 is substantially a bankrupt act similar to the national law on the subject, and that congress having passed a bankrupt act, even if the states previous to that had concurrent powers of legislation on the subject, such powers could not be exercised by them, after the enactment of a national bankrupt law.

The court, therefore, held that the act of June 4, 1901, never became operative at all because of the previously existing national bankrupt act of July 1, 1898, as to any of the persons and subjects to which the latter act applies.

The defendant is admittedly subject to the provisions of the national bankrupt act, and the entire act of 1901, so far as he is concerned, is, therefore, suspended and inoperative. He cannot invoke in this proceeding the benefits of section 31 of said act of 1901, while he and his property are in the clutches of the bankrupt laws of the United States. At the time of the filing of this application for a stay of execution, his exempt property had been set aside to him, but he was not yet finally discharged as a bankrupt.

The defendant's contention that section 31 of the act of 1901 protects any and all insolvent debtors against a waiver of exemption, and that it is intended to reverse the former decisions of the courts on that subject, is not supported by any decision to that effect, and the act of 1901 does not seem, on careful consideration, to bear that construction. Its exemption clause only speaks of certain property which the insolvent shall be entitled to retain " out of his assigned estate," and as to which no waiver shall be effective. To so enlarge this language of the act as to include in its protection insolvent debtors generally, irrespective of any proceedings under said act, as contended for by the defendant's counsel, would be to give to every insolvent debtor in every execution, the opportunity of escaping with $300 worth of property in spite of his contract waiver of the exemption. Though the Supreme Court of Pennsylvania in Firmstone v. Mack, 49 Pa. 387, intimated that if the question were a new one it would reject a debtor's waiver of his exemption, yet the court has ever since followed precedent, and enforced the waiver. .

We cannot believe that this section of the act of 1901 was inserted to reverse the decisions of the courts of last resort on this subject, and to introduce a new general rule on the subject of exemptions. A simple general act to that effect, or a clear statement of that purpose in the title of this act, would have been the proper method of accomplishing that purpose. To annul any waiver made previous to the passage of this act would be clearly unconstitutional, because it would impair the

obligation of an existing contract. In Weist v. Wuller, 210 Pa. 143, the Supreme Court of Pennsylvania held that where the debtor had waived the stay of execution, his assignee for the benefit of creditors had no standing, under the subsequent provisions of the act of 1901, to demand a stay.

The decisions of the courts wherein it has been held that a judgment creditor of a bankrupt in whose favor the latter had waived the exemption, can sell the exempt goods of the bankrupt, are all based necessarily upon the validity of the waiver. They sustain it notwithstanding the provisions of the act of 1901, and an examination of the facts of the cases, shows that in some instances the waiver had been made subsquent to the passage of the act of 1901: Illfelder v. Montgomery, 14 Pa. Dist. Rep. 25; Lafferty v. Patton, 14 Pa. Dist. Rep. 255.

Finding no sufficient authority in the statutes or in the decisions of the courts to apply said 31st section of the act of 1901 to this case, we adhere to the conclusion reached in the former opinion filed in this case and, therefore, discharge the rule at the cost of the petitioner.

*Error assigned* was the order of the court.

*J. G. Glessner*, with him *K. W. Altland*, for appellant.—The exemption allowed by section 31 of the Act of June 4, 1901, P. L. 404, does not apply to bankrupts under the national bankrupt law: In re Tilden, 1 Am. B. R. 300; Citizens' Nat. Bank v. Gass, 29 Pa. Superior Ct. 125; Potts v. Smith Mfg. Co., 25 Pa. Superior Ct. 206; Griswold v. Pratt, 50 Mass. 16; Hull's Est., 10 Pa. Dist. Rep. 661.

*Elmer S. Welsh*, for appellees.—Where the constitution of the United States leaves in the states and in congress concurrent power over a particular subject, and congress has exercised its power over such subject, the control of the states over such subject is prohibited: Ranck's Estate, 14 Pa. Dist. Rep. 496; Fister's Estate, 21 Montg. 43; Imperial Stain., etc., Co.'s Estate, 6 Lackawanna Jurist, 146; Clark Electrode Co.'s Estate, 9 Del. County Rep. 458; Potts v. Smith Mfg. Co., 25 Pa. Superior Ct. 206; Illfelder & Co. v. Montgomery, 29 Pa. C. C. Rep. 622; Lafferty v. Patton, 14 Pa. Dist. Rep. 255; Myers's

Estate, 14 Pa. Dist. Rep. 859; Myers's Est., 19 York, 21; Gilmore v. Smith, 15 Pa. Dist. Rep. 347; Wagenseller v. Gemberling, 29 Pa. C. C. Rep. 285; Tyler v. Parliman, 30 Pa. C. C. Rep. 152.

OPINION BY RICE, P. J., October 7, 1907:

The defendant's application in the court below was, first, to open the judgment and let him into a defense ; second, to set aside the execution and the levy made thereunder.   The opinion of the learned judge below contains a full and accurate recital of the facts essential to a determination of the first branch of the defendant's application, and we fully concur in his conclusion and in the reasons given by him therefor.   We also have reached the same conclusion with regard to the second branch of the application, but differ slightly, although, perhaps, not materially, in the method by which it is reached. What we shall have to say will relate to the question of the liability of the property to execution.

The judgment was entered on January 5, 1906, upon a promissory note dated October 26, 1904, containing a warrant to confess judgment and a waiver of the benefit of any exemption law; on January 10, 1906, the defendant filed his petition in the United States district court and was adjudged a bankrupt; on February 7, 1906, the trustee in bankruptcy set apart to him certain property under his claim to have the benefit of what is commonly called the $300 exemption law of Pennsylvania; on February 8, 1906, an alias fi. fa. was issued upon the judgment, by virtue of which the personal property thus set apart to the defendant was levied upon.   It does not appear that the defendant has been discharged in bankruptcy.

Under the bankruptcy act of 1867 it was held that property generally exempted by the state laws  from the claims of creditors was not part of the assets of the bankrupt and did not pass to the assignee, but that such property must be pursued by those having special claims against it in the proper state tribunals.   Speaking of that act, Justice BRADLEY said: " In other words, it is made as clear as anything can be that such exempted property constitutes no part of the assets in bankruptcy.   The agreement of the bankrupt in any particular case to waive the right to the exemption makes no difference.   He

may owe other debts in regard to which no such agreement has been made. But whether so or not, it is not for the bankrupt court to inquire. The exemption is created by the state law, and the assignee acquires no title to the exempt property. If the creditor has a claim against it, he must prosecute that claim in a court which has jurisdiction over the property, which the bankrupt court has not:" In re Bass, 3 Woods, 382. In Lockwood v. Exchange Bank of Fort Valley, 190 U. S. 294 (23 Sup. Ct. Repr. 751), the same construction was given to the act of 1898. Mr. Justice WHITE, after quoting the foregoing remarks of Mr. Justice BRADLEY, said : " The fact that the act of 1898 confers upon the court of bankruptcy authority to control exempt property in order to set it aside, and thus exclude it from the assets of the bankrupt estate to be administered, affords no just ground for holding that the court of bankruptcy must administer and distribute, as included in the assets of the estate, the very property which the act, in unambiguous language, declares shall not pass from the bankrupt or become part of the bankruptcy assets. . . . The act of 1898, instead of manifesting the purpose of congress to adopt a different rule from that which was applied, as we have seen with reference to the act of 1867, on the contrary, exhibits the intention to perpetuate the rule, since the provision of the statute to which we have referred in reason is consonant only with that hypothesis." This is plain enough, but it will not be out of place to notice in connection with the foregoing extracts from the opinion that the order reversing the judgment of the district court and remanding the proceeding was accompanied by direction " to withhold the discharge of the bankrupt, if he be otherwise entitled thereto, until a reasonable time has elapsed for the excepting creditor to assert, in a state tribunal, his alleged right " (arising out of a waiver of exemption in the note) " to subject the exempt property to the satisfaction of his claim." See also Sharp v. Woolslare, 25 Pa. Superior Ct. 251. It is apparent from the foregoing that the question, whether as against the plaintiff the defendant is entitled to claim the exemption notwithstanding the waiver contained in the note, is to be determined by the state law. Its determination cannot be affected by the fact that the goods claimed were set apart to the defendant in the bankruptcy proceeding, unless there is something in the state

law giving that fact, or the fact of the defendant's insolvency, a conclusive effect as against the waiver. Notwithstanding regrets expressed in Firmstone v. Mack, 49 Pa. 387, that the court had not held differently at the beginning, nothing was better settled in Pennsylvania than that the right of a debtor to claim the benefit of the exemption law of 1849, was a personal privilege which could be waived. But it is claimed that the law as to waiver of the exemption has been changed by the thirty-first section of the Act of June 4, 1901, P. L. 404, which provides : " That an insolvent shall be entitled to the same exemption out of the assigned estate, as he would be had an execution been issued against him ; and his right thereto shall not be denied for or by reason of the character of any claim presented or by reason of any waiver in any contract or judgment or by reason of failure to reserve it in the deed of assignment." It is claimed on the other hand that the act of 1901 and all of its provisions are in abeyance as to any of the persons and subjects to which the national bankruptcy act applies: Potts v. Smith Mfg. Co., 25 Pa. Superior Ct. 206. To this the appellant's counsel reply that the national bankruptcy act permits the state court to apply the state exemption law that is in force immediately prior to the bankruptcy proceeding, which in this case was the thirty-first section of the act of 1901. The conclusive answer to the latter part of this contention is, that that section does not apply to insolvents or the estates of insolvents in general. It does not create a new exemption, but simply gives the insolvent who has taken advantage of its provisions the benefit of existing exemption laws and declares that the right of such person to the exemption shall not be denied for or by reason of a waiver in any contract or judgment. The case of Citizens' National Bank v. Gass, 29 Pa. Superior Ct. 125, was a case where the assignor for the benefit of creditors claimed exemption out of the assigned estate, and the property claimed was regularly set apart to him under the provisions of the act of 1901. No such case is presented here. The fact that the defendant is insolvent, of course is undisputed. But if the legislature had intended to enact generally that insolvency of the debtor at the time the exemption is claimed shall defeat the waiver, we think they would have said so in plain and unequivocal terms. Under no fair construction of the act

of 1901 can it be held that this was the intention of the legislature. Therefore, the question, whether such a law could under the federal constitution be enacted by a state legislature and put in force during the existence of a national bankruptcy law, does not arise in this case.

The order is affirmed and the appeal dismissed at the costs of the appellant.