## Heckman's Estate

*Walter K. Sharpe,* for exceptants; *Edmund C. Wingerd,* contra.

DAVISON, P. J., March 12, 1932.—David E. Heckman died intestate on January 28, 1923. Letters of administration on his estate were issued to Walter K. Sharpe and John A. Defenderfer on March 20, 1928, more than five years after his death. At the time of his death he owned certain personal property, consisting of livestock and farming implements, which were used by the widow on the farm, the title to which was in her and said David E. Heckman as tenants by the entireties, for several years after his death and then sold and the proceeds used to pay debts of said decedent.

Fannie C. Heckman, the widow, remarried, but the date of that remarriage does not appear in the evidence with any degree of certainty, it having been testified to by Aaron Heckman that to the best of his knowledge her marriage to John A. Defenderfer occurred in the fall of 1928, and by Fannie A. Defenderfer herself that she was married before March 28, 1931, when the money was paid over to these accountants from which she claimed her widow's exemption.

For some reason she was not asked as to the date of her marriage, and all the evidence we have as to when it occurred is that above referred to. The twentieth finding of fact of the auditor is as follows:

"Fannie C. Heckman, widow of David E. Heckman, married John A. Defenderfer in the fall of 1927, or early part of winter of 1928, prior to claiming the widow's exemption from the estate of her former husband, David E. Heckman."

This finding of fact was not excepted to and the matter was argued on both sides on the assumption that she was married before said claim was made. There is nothing to show when the claim was made by the widow, except the widow's appraisement filed in this court. The appraisers were qualified in May of 1928, and the appraisement filed and approved nisi June 12, 1928, and, no exceptions having been filed to it, it was confirmed absolutely July 13, 1928. The appraisement is on the usual form for appraisements of this kind and is headed:

"Inventory and appraisement of the property which Fannie C. Heckman, now Fannie C. Defenderfer, the widow of ...................., deceased, elected to retain for herself and family under the Act of Assembly of this Commonwealth passed the 7th day of June, A. D. 1917."

As this is the only data as to the date of the claim by the widow, we must conclude that she was remarried when said claim was made, as it sets forth "now Fannie C. Defenderfer."

The administrators filed their first and final account in said estate, in which they charged themselves with all the money received by them as such administrators, $1308.94, and took credit for the widow's exemption of $500, together with other items not excepted to.

Exceptions were filed to the allowance of this credit on behalf of Isaac Kriner, a creditor, and such exceptions were sustained by the auditor and the accountants surcharged with said item of $500. Exceptions were filed by said Fannie C. Defenderfer and by the accountants to the report of the auditor and overruled by him, and such exceptions were properly renewed and are now before us to be disposed of.

The only question before us as the case was presented to us is thus stated by counsel for Isaac Kriner:

"If a widow, who has remarried prior to claiming exemption from her husband's estate, claims her exemption in cash and an appraisement of the cash is filed and approved by the court without exceptions being taken thereto, can an exception be taken to the administrators' account in so far as it claims a credit of $500 paid the widow as her exemption?"

It cannot be denied that if a widow remarries and then claims her exemption from her dead husband's estate she is barred from receiving such exemption, but it is contended by the learned counsel for the exceptants to the report of the auditor that when her exemption has been regularly filed and approved by the court this is final and this exemption cannot then be attacked collaterally. The appraisement in the present case is of cash only. That the cash was to be derived from the proceeds of the personal property of the decedent does not change its character as cash, and, under these circumstances, counsel for Isaac Kriner argues to us that no appraisement was necessary, and, hence, the action of the court in approving it was without authority and that, as a consequence, the payment of the exemption can be excepted to in the account of the administrators.

The Fiduciaries Act of June 7, 1917, P. L. 447, provides, in section twelve (a), as follows:

"The widow, if any, or if there be no widow, or if she has forfeited her rights, then the children forming part of the family of any decedent dying, testate or

intestate, within this Commonwealth, or dying outside of this Commonwealth, but whose estate is settled in this Commonwealth, may retain or claim either real or personal property, or the proceeds of either real or personal property, belonging to said estate, to the value of five hundred dollars; and the property so retained or claimed shall not be sold, but suffered to remain for the use of the widow or children. It shall be the duty of the executor or administrator of such decedent to have the said property, if personal, appraised and set apart to said widow or children by the appraisers appointed to appraise the other personal estate of the decedent; or, if real, then by two appraisers to be appointed by the orphans' court, who may be the same persons appointed to appraise the personal estate. If said five hundred dollars, or any part thereof, shall be claimed out of money or the proceeds of real or personal property belonging to the estate, it shall be the duty of the executor or administrator to set apart to said widow or children the amount so claimed, out of said money or out of the proceeds of said real or personal property after he shall have sold the same. Should any or all of the appraisers of the other personal estate be unable to make the appraisement of personal property provided for by this section, or should there be no such appraisers, the orphans' court of the proper county may appoint a properly qualified appraiser or appraisers to act in the place of said appraiser or appraisers of the other personal estate of the decedent."

It also provides in section twelve (d) as follows:

"Upon due proof of compliance with such requirements as to notice, by advertisement or otherwise, as may be prescribed by the orphans' court of the proper county by general rule or otherwise, such court may enter a decree directing the payment of the money, or confirming the appraisement of the personal or real estate chosen by said widow or children, and said appraisement, signed and certified by the appraisers and approved by the court, shall be filed among the records thereof: Provided, that all expenses of such advertisement or notice shall be paid out of the decedent's estate."

Section twelve (a) makes different provisions as to requiring an appraisement and setting apart of that claimed by the widow when the claim is for personal or real property from what it requires when the claim is in whole or in part for money or proceeds of real or personal property. When the claim is for personal property, it is the duty of the executor or administrator to have such personal property appraised and set apart to the widow by the appraisers appointed to appraise the other personal estate of the decedent. When it is for real property, then it is to be appraised by two appraisers to be appointed by the court. But when it, or any part of it, is claimed out of money or the proceeds of real or personal property belonging to the estate (as in the instant case) then it is the duty of the executor or administrator to do what? Have an appraisement made and confirmed by the court as required in section twelve (d) as to personal property? Not at all, but what is required of them is to set apart to said widow the amount so claimed out of money or out of the proceeds of real or personal property when the same shall be sold. No appraisement and no confirmation of an appraisement is required. What is, therefore, prescribed by said act as to the payment to the widow of said money by the executor or administrator? We find this provided for in section twelve (d), where it directs as to money or cash elected to be retained, as follows: "Upon due proof of compliance with such requirements as to notice, by advertisement or otherwise, as may be prescribed by the orphans' court of the proper county by general rule or otherwise, such court may enter a decree directing the payment of the money, or confirming the appraisement of the personal or real estate chosen by said widow or children."

In this act the difference between the procedure when personal or real property is claimed and when cash is claimed is clearly recognized and provided for, and if we had nothing to guide us but the act of assembly itself, we would feel bound to sustain the report of the auditor. This act recognizes that an appraisement of cash or money would be a vain thing and absolutely useless, and, therefore, not only makes no provision for its appraisement but distinctly and definitely provides that the money be set apart for the widow and paid over under a general rule of court, or if there be none providing for that circumstance, then by other rule. There is no rule of court in this county providing for the payment of the money to the widow under circumstances such as this, but the act provides that a special rule may be granted. The purpose of the exemption to a widow, or the children, is to relieve their present wants and to provide a fund at once sufficient for that purpose. If no provision had been made in the act of assembly for the payment to the widow when she elected to take money for her exemption until the account of the administrator or executor had been finally acted on, then a hardship might have resulted, so the act provided a means by which said payment could be promptly made. If the administrator presents a petition to the court setting forth the facts, an order could be made directing such notice of said petition as the court deems necessary, and if no exceptions were then filed to its payment it could be so ordered. No person interested can be charged with a failure to except to the filing of a widow's appraisement where none is required by law, and no one can be barred from his right to except to a payment to a widow, shown in the account of the administrators, when the procedure provided by law for their payment of that exemption to her has not been followed.

The courts, however, have passed upon this question and have taken the same position as we have taken from a consideration of the said act of assembly. As early as Larrison's Appeal, 36 Pa. 130, the Supreme Court said: "The widow is entitled to claim from the administrator of her deceased husband, as against his creditors, $300 worth of real or personal property; and we think that this term properly includes evidences of debt, when they are the only property left by the decedent. She may therefore claim the amount out of their proceeds. And why appraise such property? Surely only to ascertain its value in money. But to appraise money is only to count it. An officer may find only money to levy on, and surely, if exemption applied to that, an appraisement would not be needed, for counting answers all the purpose of it." This is also held in Peterman's Appeal, 76 Pa. 116. In Hollinger's Estate (No. 1), 259 Pa. 72, the Supreme Court said: "Under the Act of 1851, supra, it was early decided (Larrison's Appeal, 36 Pa. 130) that, when the election is to take the amount of the exemption in cash or its equivalent, an appraisement is not necessary, this ruling, which was followed by the court below, being founded upon the theory that 'to appraise money is to count, and counting answers all the purposes of appraisement' (Peterman's Appeal, 76 Pa. 116, 120); this doctrine has been consistently adhered to ever since: See Sellers's Estate, 82 Pa. 153, 157; Finney's Appeal, 113 Pa. 11, 16; Towanda Bank's Appeal, 1 Mona. (Pa.) 463; Beetem v. Getz, 5 Pa. Superior Ct. 71, 76; Rigby's Estate, 8 Pa. Superior Ct. 108, 112; Sharp v. Woolslare, 25 Pa. Superior Ct. 251, 254."

In Rigby's Estate, 8 Pa. Superior Ct. 108, 111, it is held: "The election of the widow in the present case must be viewed as an exercise of the right to select money rather than property. . . . The rights of the parties do not depend on an appraisement. Appraisements are necessary only to determine the value of property which the widow elects to retain. In such cases confirmation by the court is also necessary to establish the widow's right to the property, and in

this respect is for the protection alike of the widow and of the executors. But where the widow elects to take money no appraisement is necessary."

In Baldy's Appeal, 40 Pa. 328, 331, it is said: "As to the money no appraisement was necessary, and it could be claimed in the administration account without any appraisement." If no appraisement was necessary in the case of money, and it could be claimed as a credit in the account of the administrator, then it follows, of course, that that credit would be a subject of exception; and can it be argued, because a vain and useless thing is done, an appraisement made when none is required, that this changes the whole status of the case and gives to the payment of the money to the widow a sanctity it would not otherwise have and makes a credit taken for that payment in the account of the administrator subject to no exception or attack. We cannot so construe the law.

In Sellers's Estate, 82 Pa. 153, this whole question is considered and decided by the court. Speaking of the Act of April 8, 1859, and the Act of 1851, it is said: "In both cases, obviously, the provision for appraisement in the Act of 1859 was treated as applicable to property in the sense of land or chattels, and not to property in the sense of money, or of the proceeds of securities or stock." In a later part of that opinion, page 158, the court says: "The true rule is, that where a demand has been made in proper time, the money, in the language of Judge Thompson, in Baldy's Appeal, may 'be claimed in the administration account without any appraisement.' It is not the widow's claim, but the appraisement of chattels elected to be retained, on which it is made the duty of the court to pass. The right to elect rests in the statutes, and is a question between the widow and the administrator. It is the valuation of chattels, that cannot be calculated or counted, but must be estimated by appraisers, which the law requires the court to approve or set aside."

If, as herein stated, it is the valuation of chattels that cannot be calculated or counted, but must be estimated by appraisers, which the law requires the court to approve, how can the court have any power or authority to approve a claim for cash, which can be counted, which is all the law requires? The court cannot, by assuming to approve something over which it has no power or authority, tie the hands of an interested party so as to affect the rights which he would otherwise have. This is illustrated in the case where the court has made an order for the sale of a decedent's real estate for the payment of his debts, and it is later ascertained that the debts set out in the petition were not liens on said real estate when said order was granted. Here the order of the court was without authority and the sale was set aside. It is our opinion that this court had no authority over the subject matter of this widow's appraisement so that it could approve the same, and, hence, it was without jurisdiction and the credit could be attacked in the settlement of the account of the administrator.

In Bates's Estate, 11 Del. Co. R. 429, 436, the court passes on the question before us and says:

"The next subject is the consideration of the credit claimed for the widow's exemption. It appears that claim was made by the widow for this exemption to the Administrator on February 13, 1906, in which she elected to retain money. The administrator appointed appraisers who appraised to her in cash three hundred dollars. This inventory was filed in court on August 4, 1906, and was approved by the court on October 1, 1906. By the Act of April 8, 1859, P. L. 425, the widow is entitled to claim her exemption out of money or indebtedness. The appraisement and confirmation by the court of the widow's inventory had no legal efficacy. Such appraisement and confirmation relates solely to tangible property. The widow's claim for money required no appraisement, because such an act would be an absurdity. Her claim for money is a continuing claim

and is allowable upon final accounting. These propositions are deduced from Baldy's Appeal, 40 Pa. 328, and Sellers's Estate, 82 Pa. 153."

It is urged on us by counsel for the widow and accountants that this exemption, having been approved by the court, cannot be attacked collaterally. This position is correct under certain circumstances, but not as applied to the case at bar. It is held in Clark's Estate, 275 Pa. 506, that an award of a widow's exemption is not void, but only voidable, and, therefore, cannot be attacked collaterally, and this same conclusion is reached in Cierlinski v. Rys, 225 Pa. 312, but in these cases, and others which hold the same thing, the exemption claimed was in chattels, which, under the cases we have cited, required appraisement and approval by the court, and, as to these cases, the court having power to act and having acted, its decree was not subject to collateral attack, but, in the instant case, the subject matter was cash, money, something over which the court had no power to pass in the matter of a widow's appraisement, as was here done, and, hence, its decree was not such a one as could not be open to attack in a collateral proceeding. These cases are authority for the position that a decree of court having jurisdiction, even though erroneous, is conclusive in a collateral proceeding, but not when the court has no jurisdiction, as in the present case. We are, therefore, of opinion we must overrule the exceptions filed to said auditor's report and confirm the same.

Now, March 12, 1932, the exceptions filed to the auditor's report in said case are overruled and said report is confirmed.

From Albert Strite, Chambersburg, Pa.